**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

MICHAEL FERRARO,                    )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )    Docket no. 2:10-cv-384-GZS
                                    )
UNUM LIFE INSURANCE COMPANY,        )
OF AMERICA, ET AL.                  )
                                    )
                    Defendants.     )


**ORDER ON MOTION TO REMAND**


Before the Court is Plaintiff's Motion to Remand (Docket # 16) and Defendants' Motion

for Summary Judgment (Docket # 20).  The Court held oral argument on both motions on

February 8, 2011.  In accordance with the Court's earlier endorsement order, the Court must first

determine whether there is a basis for federal jurisdiction over this case.  As explained herein, the

Court concludes that it does have jurisdiction and, therefore, DENIES the Motion to Remand and

RESERVES RULING on the Motion for Summary Judgment.


**I.      STANDARD OF REVIEW**

Generally, a defendant may remove a state court action to federal court if there is a basis for

federal jurisdiction.  28 U.S.C. § 1441(a).  When such a removal is contested, the removing

defendant "has the burden of establishing that the court has subject matter jurisdiction over the

case." Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009) (citing In re

New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 14 (1st Cir. 2008)).  When

federal question jurisdiction is invoked, as it is here, the well-pleaded complaint rule generally

1

requires that federal question jurisdiction "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 10 (1983). However, "certain state claims are subject to removal, even if they purport to rest only on state law, because the subject matter is powerfully preempted by federal law, which offers some 'substitute' cause of action." Negron-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 6 (1st Cir. 2008) (citations omitted); see also Warner v. Atkinson Freight Lines Corp., 350 F. Supp. 2d 108, 115 (D. Me. 2004) ("Complete preemption propels a significant exception to the well-pleaded complaint rule- the artful pleading doctrine.") (internal quotations omitted). As relevant to the pending matter, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, is one federal statute that can completely preempt state law causes of action and provide a substitute cause of action. See Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004); Negron-Fuentes, 532 F.3d at 6-7 (both discussing the broad reach of ERISA preemption).

In this case, the parties agree that the applicability of ERISA preemption turns on whether the long term disability insurance purchased by Plaintiff qualifies as an employee welfare benefit plan. The parties likewise agree that the answer to this question should be answered by first examining the Department of Labor's "safe harbor" regulation, which, in relevant part, provides:

> [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j) (hereinafter, the "safe harbor regulation"). As the First Circuit has explained, a plan that meets all four prongs of the safe harbor regulation "will be deemed not to have been 'established or maintained' by the employer" for purposes of ERISA. Johnson v. Watts Regulator Co., 63 F.3d 1129, 1133 (1st Cir. 1995).


## II.    FACTUAL BACKGROUND

In connection with the pending motions, the parties conducted limited discovery. Recognizing Defendants' burden to establish a basis for federal jurisdiction, the Court finds the following facts to be established in connection with the Motion to Remand:[1]

Since August 1, 2003, Defendant Unum Life Insurance Company and Unum Group (together, "Unum") have offered long term and short term disability coverage to employees of Berlin City Car Center, Inc. ("Berlin City" or "Summit")[2] under Group Policy No. 579169 (hereinafter "Policy"). (See Policy 579169 001, dated 7/1/2005 (PageID # 282-339) & Policy

---

[1] Given the early stage of these proceedings and the limited discovery conducted, the Court's findings are not intended to bind the parties in connection with any later proceedings that may be conducted after the factual record is more fully developed.

[2] In 2007, Berlin City was purchased by Summit Automotive, LLC ("Summit"). In the context of the pending motion, this change in ownership has no impact on the jurisdictional issue. However, the record contains some post-2007 employer references to Summit rather than Berlin City.

579169 002, dated 7/1/2008 (PageID # 353-409).)[3]  The cover page on this Policy states, in relevant part:  "This policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments." (PageID # 353.)  A later section of the Policy, titled "ERISA," includes a summary with multiple references to Summit.  The Policy also includes a section titled, "Your Rights Under ERISA." (PageID # 404-05.)  Andrew Bradford, Summit's Chief Financial Officer, was the named plan administrator and Summit had the right to amend, modify or terminate the Policy or request a policy change..  (See, e.g., PageID # 260, 400-01, 927, 928, 931; Allen Dep. (Docket # 38-1) at 31 & 41.)

As the Policy makes clear, the insurance coverage was available to all Summit employees but was completely voluntary.  A Summit employee who purchased long term disability coverage under this plan paid for the entire cost of coverage.  To date, 254 of 884 Summit employees have purchased long term disability coverage under the Policy.

Summit's day-to-day role with respect to Policy 579169 is limited to remitting premiums withheld from the paychecks of employees and providing claim forms that can be distributed to employees.  Additionally, Summit's payroll administrators can answer basic questions regarding benefits, assist employees with claim forms, and input basic coverage changes for Summit employees directly into the Benefit Harbor billing system.  (Allen Dep. at 36-37; Summit Responses to Written Questions (Docket # 38-4) at 5.)  Summit maintains two additional policies with Unum.  One of those policies, Policy 121922, provides short-term disability insurance for

---

[3] Defendants have provided the bulk of the record to the Court in a single 695-page "Exhibit A," which is described as "the sales file for Group Policy 579169" as it is kept "in the regular course of business" (Leo Aff. (Docket # 23) ¶7.)  To the extent the Court has located various relevant exhibits in the sales file, it refers to them by the "PageID" number created upon filing the document in CM/ECF.

Summit employees with more than five years of service. Summit pays the premiums for employees under this policy.

All of the insurance policies offered to Summit employees are arranged by Paul Allen of the Buckley Group, who has acted as the insurance broker for Berlin City/Summit since 2001. The Buckley Group is an independent insurance broker that works on behalf of clients, like Summit and Berlin City, to find insurance products from various carriers. While the Buckley Group recommends various insurance policies and carriers to its clients, each client ultimately decides what insurance products are offered to its employees. (Allen Dep. at 35.) To the extent the client chooses to offer a group policy, the rates and terms offered to employees under those group policies are more favorable than the rates and terms for similar types of individual coverage. (Allen Dep. at 26, 47-48.)

As Summit's insurance broker, Allen conducts annual employee meetings at various dealerships. During these meetings, Allen answers questions about the various insurance policies available and encourages employees to enroll in those policies. (Allen Dep. at 21-22.) The Buckley Group also coordinates most of ministerial functions related to all of Summit's insurance policies, including communicating with carriers, such as Unum, on Summit's behalf. On occasion, the Buckley Group has acted on behalf of Summit to request changes to the Unum policies. (See, e.g., Allen Dep. at 29-33.) Besides the Buckley Group, the Farmington Company and Benefit Harbor are involved in handling enrollments under Summit's various Unum policies. (Allen Dep. at 14.) Together, these entities have created a "paperless system" for handling enrollments and billing under the Unum policies available to Summit employees. (Allen Dep. at 17, 22-23.) Farmington Company is paid on commission by Unum on two of individual policies

(whole life insurance and accident insurance) offered to Summit employees. (Allen Dep. at 18-19.)  Benefit Harbor is paid by the Buckley Group.  (Allen Dep. at 23.)

Plaintiff Michael Ferraro worked as a manager at Berlin City from September 2006 until April 8, 2009, at which time he was terminated due to an illness that prevented him from performing his job.  Ferraro purchased long term disability coverage under the Policy in 2006.  At the time Ferraro purchased long term disability coverage, he recalls that outside representatives came in and met one-on-one with him and filled out the application necessary for the long term disability coverage.  Thus, Ferraro likely met with Allen and a Farmington Company representative in the course of purchasing long term disability coverage under the Policy.

The current record reflects that most Summit employees received two documents from Summit that discussed the various long term and short terms disability insurance policies.  First, employees, including Ferraro, received the Summit Automotive Partners Personnel Policies and Procedures Handbook (Docket # 22-1) (hereinafter, "Handbook").  In the Associate Benefits section of the Handbook, there is a section listing all of the benefit plans offered, including "Long-term Disability Insurance / Short-term Disability Insurance" (PageID # 228.)  The Handbook goes on to explain: "Your Human Resources Representative will provide you with additional details concerning the benefit programs offered by your SUMMIT AUTOMOTIVE PARTNERS dealership and will be available to answer any questions you may have." (PageID # 229.)

Second, employees generally received a booklet describing various types of insurance employees could elect to purchase.  The 2008 version of this booklet was compiled by Unum, then approved by Summit or the Buckley Group acting as Summit's broker, and then distributed

by Summit to its employees (hereinafter, the "Booklet").  The cover of the Booklet contains logos for both Unum and Berlin City Auto Group.  The Booklet explains on its opening page: "Benefits are a valuable part of your compensation package.  . . . That's why Berlin City Auto Group has made these valuable insurance products from Unum available for you and your family.  The voluntary benefits described in this booklet can build on the benefits already provided by Berlin City Auto Group, giving you additional protection that you and your family may need." (PageID # 443.)  The benefit overview in the Booklet lists short term disability insurance, long term disability insurance, various types of life insurance and accident insurance. It notes that group short term disability insurance is "100% employer paid" for full-time employees with "five or more years of service" and describes all of the other available insurance options as "100% employee paid."  (PageID # 444.)  In multiple places, the Booklet notes that applications for benefits will be handled via "one-on-one" meetings with Farmington Company benefit representatives.  (PageID # 443 & 457.)  Notably, a small print disclosure on the last page of the booklet refers the reader to other forms for complete details of coverage.  (PageID # 457.) The Booklet contains no explicit references to ERISA.

The election form completed by employees who enrolled in any of the Unum plans indicated "BERLIN CITY OF PORTLAND" across the top and explicitly noted that the form should be "returned to the employer at the end of the enrollment period." (PageID # 901.)

## III.    DISCUSSION

Plaintiff Michael Ferraro initially filed his Complaint (Docket # 2-2) against Defendants in state court claiming breach of contract (Count I), tortious interference with contractual relationships (Count II), unfair claims settlement practices (Count III), intentional infliction of

emotional distress (Count IV) and intentional interference with contract and economic expectation (Count V). The Unum Defendants removed the action claiming that all of these state claims are preempted by ERISA.[4] Plaintiff seeks remand arguing that his state law claims are not preempted because the Policy at issue falls within the safe harbor regulation.

With respect to whether the Policy at issue falls within the safe harbor regulation, two of the four factors are not in dispute; namely, participation in the Policy is completely voluntary and the employer receives no consideration. The Court is left to determine: whether Ferraro's employer made any contributions to the plan; as well as, what functions the employer performed and whether those functions rise to the level of employer endorsement of the plan. See 29 C.F.R. § 2510.3-1(j)(1) & (3). The Court first considers the issue of employer functions and employer endorsement.

### A. Employer Functions and Employer Endorsement

As the First Circuit explained in <u>Johnson</u>, "as long as the employer merely advises employees of the availability of group insurance, accepts payroll deductions, passes them on to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program under section 2510.3-1(j)(3)." <u>Johnson</u>, 63 F.3d at 1134. Ultimately, the First Circuit held that employer endorsement occurs "if, in light of all the surrounding facts and circumstances, an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the program's availability but had exercised control over it or made it appear to be part and parcel of the company's own benefit package." <u>Id.</u> at 1135.

---

[4] A third Defendant, Professional Disability Associated, LLC ("PDA") has joined Unum's Opposition to the Motion to Remand and similarly argues that Plaintiff's claims against them are preempted by ERISA. (See PDA Opp'n to Mot. to Remand (Docket # 27).)

In this case, there is no doubt that Summit acted as the plan administrator and exercised control over Policy 579169 as well as the entire benefit package offered to Summit employees. Nonetheless, Plaintiff urges the Court to find that an objectively reasonable employee would not have reached this conclusion based on the materials distributed and the manner in which enrollments were handled. In the Court's assessment, an objectively reasonable Summit employee would view the long term disability coverage as part of the Summit benefit package. This conclusion flows from an objective review of the Handbook and the Booklet, which an employee would have received from Summit. A reasonable employee who reviewed these documents and had minimal interactions with Summit's payroll administrators would not view the long term disability coverage as distinct and separate from the other Summit benefits. Moreover, an objectively reasonable employee who took the time to request and review Policy 579169 would undoubtedly understand that: (1) Summit was the plan administrator thereby exercising ultimate control over the plan and (2) Policy 579169 is governed by ERISA. In short, an employee conducting reasonable due diligence could easily conclude that Summit was doing more than simply facilitating Unum's offer of long term disability coverage.

The fact that annual meetings were conducted by the Buckley Group (acting on behalf of Summit) and enrollments were handled by the Farmington Company (acting on behalf of Unum) simply does not change this conclusion. Ferraro indicated that he perceived the Buckley Group and the Farmington Company as "insurance representatives" when they came to the dealership, which is partially true. (Ferraro Decl. (Docket # 16-1) at 1-2.) However, at least with respect to the Buckley Group, this outside insurance representative was, in fact, acting as Summit's agent. Thus, an objectively reasonable employee could just as easily have seen the actions of Allen and the Buckley Group as actions done on behalf of the employer. In any event, the Court need not

resolve whether an objectively reasonable employee viewed the Buckley Group as acting on behalf of Summit or Unum. For, based on the written materials received from Summit, the role of Summit's payroll administrators as well as the plain language of the Policy, which any employee could have requested, the Court concludes that an objectively reasonable Summit employee would believe Summit exercised control over the long term disability policy or made it appear to be part and parcel of the company's own benefit package.

It is worth noting that this Court would be hard pressed to conclude that an employee who chose to bring an ERISA claim based on Policy 579169 was not entitled to do so. The language of the Policy clearly invokes ERISA and ties the policy to the employer. This fact further bolsters the Court's finding that the plan at issue in the case falls outside the safe harbor regulation. Alternatively, Policy 579169 would be susceptible to incompatible findings, e.g., an ERISA "employee welfare benefit plan" for one plaintiff wishing to bring an ERISA claim but outside of ERISA's coverage as to another plaintiff with an artfully pled state law complaint. See generally Helfman v. GE Group Life Assur. Co., 573 F.3d 383, 390 (6th Cir. 2009) (holding that "a single plan may not be variously governed by both ERISA and state law, depending on the particular employee in question").

## B. Contributions Made by the Employer

Unum also urges the Court to find that Summit as employer contributed to the plan at issue in this case on two bases: (1) by securing a more favorable group rate and (2) by its contribution to the short term disability coverage for employees with five or more years of service.[5] As to the group rate argument, Plaintiff counters that allowing every plan that simply

---

[5] To the extent that the Unum Defendants initially argued that the Court could also find a constructive contribution based on the factual assertion that Summit, as the employer, withheld premiums on a pre-tax basis, the Court considers this argument to be formally withdrawn in light of the more fully developed record. (See Defs. Mot. for Summ. J. (Docket # 20) at 12; Second Leo Decl. (Docket # 47) ¶3.)

secures a group rate (as compared to an individual rate) to be deemed an employer contribution would "nullify the safe harbor regulation." (Pl. Reply (Docket # 31) at 9.)  The Court agrees and, on the record presented, declines to find that simply securing a group rate amounts to an employer contribution that takes a plan outside the safe harbor regulation.

Turning to the second basis, the Court is left to consider whether the short term disability coverage for employees with five or more years of service, which is actually offered under a different Unum policy, i.e., Policy 121922, is part of the same plan.  The parties agree that the employer made contributions to Policy 121922.  Thus, Defendants argue the Court should adopt a broad view of the "employee welfare benefit plan," under which the coverage under Policy 121922 and 579168 are deemed part of the same bundled plan or program.  Ultimately, whether such a broad view is contemplated or required in the context of the employer contribution prong of the safe harbor regulation is a question that this Court need not answer in the context of the pending motion.  Instead, having found that the actions of Summit exceed the functions allowed under the employer endorsement prong of the safe harbor regulation, 29 C.F.R. § 2510.3-1(j)(3), the Court leaves unanswered the more difficult, albeit interesting, question of whether an employer contribution to a separate short term disability plan available only to a defined subset of employees ought to be considered an employer contribution for each and every policy offered to the entire group.

In short, the Court holds that the Policy 579169 is an employee welfare plan that falls outside the safe harbor regulation;  as such, there is federal jurisdiction over this case and it was properly removed by Defendants.  As discussed at oral argument, the Court believes the most efficient course is to provide Plaintiff an opportunity to amend his Complaint in light of this holding.

**IV.     CONCLUSION**

Therefore, the Court hereby DENIES Plaintiff's Motion to Remand (Docket # 16). Based on the representations of the parties at oral argument, the Court will RESERVE RULING on Defendants' Motion for Summary Judgment (Docket # 20) and allow Plaintiff thirty days to amend his Complaint in light of the Court's ruling on the Motion to Remand.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 23rd day of February, 2011.