# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL FERRARO )<br><br>)<br><br>)<br>    PLAINTIFF )<br><br>)<br>vs. )<br><br>)<br>UNUM LIFE INSURANCE COMPANY )<br>OF AMERICA and UNUM GROUP )<br>(FKA UNUMPROVIDENT )<br>CORPORATION) )<br><br>)<br>And )<br><br>)<br>HILDA SOLIS )<br>SECRETARY LABOR )<br>U.S. Department of Labor )<br>200 Constitution Ave, NW )<br>Washington, DC 20210 )<br>In her official capacity as Secretary of )<br>the United States Department of Labor )<br><br>)<br><br>)<br>    DEFENDANTS ) | CIVIL NO.: 2:10-CV-384-GZS |

**AMENDED COMPLAINT SEEKING INDIVIDUAL BENEFITS DUE, CLASS
AND DECLARATORY RELIEF: CONSTITUTIONAL QUESTIONS RAISED[1]**

### *Jurisdiction*

1. This complaint is brought by Michael Ferraro individually for benefits due and

as a class representative for declaratory and injunctive relief pursuant to Fed. R. Civ. P.

---

[1] This Complaint is longer and stated in significantly more detail than it would have been prior to Supreme Court's rulings in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Aschcroft v. Iqbol,* 129 S.Ct. 1937 (2009). It would be difficult to argue that those two decisions have not changed the rules of pleading to a significant degree. It is now required that complaints "state a claim to relief that is plausible on its face". *Twombly* at 570. What is plausible on its face may certainly vary with the eye of the beholder. The undersigned attorney is litigating or has litigated cases in various federal districts and has found that nearly any claim with any complexity will be met by a Fed. R. Civ. P. 12 (b)(6) Motion to Dismiss. Accordingly, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action". *Id* at 555. Footnotes with the exception of those following titles, such as this one, are a part of the paragraph or sentence to which they are appended.

23 (a) and (b)(2) on behalf of all persons similarly situated.  In addition to a claim for benefits under a long term disability plan, Ferraro also raises a Fifth Amendment due process challenge to the Unum Group's exercise of statutorily created authority to adjudicate ERISA claim disputes of its own making when it also acts under the authority of § 503(2) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1133(2)) and purports to provide the "full and fair review" mandated to be available to denied plan participants[2].  Section 503(2) compels denied claimants to resort to a statutorily created dispute resolution procedure which, is necessarily an adjudicative process[3].  Constitutional jurisprudence requires that citizens cannot be compelled by the power of the state to submit their disputes for adjudication by a tribunal which has a direct financial stake in the resolution of the dispute, or as here is in fact a real party in interest to the dispute.  However that is precisely what plan participants are compelled to do when a dispute arises between a participant and an insurer who both pays plan benefits and who claims for itself the authority to conduct and decide § 503(2) appeals.

2. Unum Life Insurance Company of America ("Unum") is a subsidiary of Unum Group.  Unum is a licensed Maine insurer which issued the plan promising Ferraro long

---

[2] Section 503(2) (29 U.S.C. § 1133(2)) of ERISA reads:
      In accordance with the regulations of the Secretary every employee benefit plan shall-
      (1) …
      (2) Afford a reasonable opportunity to any participant whose claim for benefits   has been denied for a ***full and fair review*** by the ***appropriate named   fiduciary*** of the decision denying the claim.  (Emphasis added.)

Of course, if such reviews lacked any impact on subsequent litigation there would not be an issue.  It is precisely that impact which creates the constitutional question.

[3] To adjudicate is simply to "settle the rights or duties of the parties…on the merits of the issues raised" or "to make [a decision] final or interlocutory in the course of quasi-judicial proceedings." Webster's Third New International Dictionary (2002 ed. unabridged) 27.  It is difficult to understand how the assumption of statutory authority by one party to a dispute to resolve the dispute between it and another party could possibly fit the statutory designation of a "full and fair" review as Congress must be presumed to have intended full and fair to mean.

term disability benefits upon his disability and is therefore contractually obligated to pay such benefits.  All claims decisions are, however, assigned to employees of Unum Group, the parent corporation acting in this case as an agent for Unum Life with respect to all claims submitted under Unum Life contracts.  Unum Group employees make the initial claim decisions on all Unum Life claims and, as well, rules on all § 503(2) appeals[4]. Unum Group assesses profitably on a quarterly basis by among other things measuring the benefit ratio of its group long term disability insurance business under policies sold throughout the country not only by Unum Life but by other subsidiaries such as Provident Life and Accident, First Unum and Paul Revere Life Insurance Company.

3. Unum Group has a strong financial interest in lowering the benefit ratio measured as a percentage of benefits paid out to premiums paid in.

4. Since just following the Regulatory Settlement Agreement ("RSA") Unum's benefit ratio as announced in its quarterly reports and conferences has gone from approximately 93 to approximately 87 per quarter.  Each one point decline in the benefit ratio results in an increase in Unum Group's operating income of millions of dollars.

---

[4] It is often assumed that nominally private action is immune from due process challenges. That is not the case, however, when the private action rests, as here, on governmental authority.  *Concrete Pipe and Products of California, Inc. v Construction Laborers' Pension Trust*, 508 US 602, 617 (1993). ("Due process requires a 'neutral and detached judge in the first instance' … and the command is no different when a legislature delegates adjudicative functions to a private party…" [Internal citations omitted]. Thus two questions embody the crux of this case: (1) Is the function of deciding who wins or loses disputes over denied claims an adjudicative function? and (2) Does the authority compelling resort to such binding adjudication (subject only to sharply circumscribed judicial review) stem from governmental conduct, (here Congress via § 503(2))?

If Unum Group says in defense that it is only providing private reviews which do not rest on the authority of § 503 (2) or the Department of Labor regulations, then any such plans are simply unlawful because the avenue of appeal mandated by Congress is lacking. In that case the remedies sought herein would still be appropriate, if for different reasons; i.e. because a purely private review would ignore the statutory mandate established in § 503(2).

5. Unum Group has publicly announced that it obtained a favorable reduction in the benefit ratio by becoming "much tighter on claims".  Obviously, the way an insurer becomes tighter on claims leading to a reduction in what Unum calls the benefit ratio is by denying or terminating more claims.

6. Accordingly, Unum Group as parent corporation of Unum Life has a powerful financial incentive to deny appeals brought by plan participants who dispute and seek to resolve their initial claim denials through the administrative appeals process established by Congress when it enacted § 503(2).

7. All or nearly all policies issued by Unum Life appoint either Unum Life or Unum Group as the "claims fiduciary" and in all cases Unum Group is, if not formally designated in the policy itself, as claims fiduciary Unum Group serves as de facto "appropriate named fiduciary" to perform the function of addressing appeals specifically brought to satisfy the mandate of § 503(2) of ERISA.  (Unum Life is effectively a corporate shell which has no claims staff at all.)  No alternate avenue for the pursuit of a § 503(2) appeal exists.

8. The Secretary of Labor is a Defendant because Congress expressly directed the Department of Labor to assume responsibility for promulgating regulations insuring that the exercise of the authority to resolve disputes between plan participants and administrators pursuant to § 503(2) is exercised in a manner and by a tribunal which will insure that such appeal proceedings are truly "full and fair" as that phrase must be understood when subjected to constitutional scrutiny.  Unfortunately, the Secretary's existing regulations fail completely to incorporate the most basic values of procedural due process and have thus allowed the authority Congress created to be fundamentally

abused.   The flaw in the statute and in the regulations interpreting the statute is so fundamental that it requires § 503(2) to be held unconstitutional at least as its authority is exercised by Unum Group as described in this action.   Because the Plaintiff seeks declaratory and injunctive relief on behalf of the class directed to all Defendants jurisdiction over this matter exists pursuant to § 503(e) of ERISA (29 U.S.C. § 1132(e)).

9. Additionally, the issues raised in this complaint arise under the United States Constitution and the laws of the United States and present federal questions under Article III, Section 2 of the United States Constitution and 28 U.S.C. § 1331.  This Court has the authority to grant declaratory and injunctive relief pursuant to 29 U.S.C. §1132(a)(3)(A) and (B) and 28 U.S.C. § 2201 *et. seq.*  Venue is proper in this Court pursuant to 29 U.S.C. § 1132(k) because the subject plans are administered in Maine.  Additionally, this Court has authority to grant individual relief to the named Plaintiff pursuant to 29 U.S.C. § 1132(a)(1)(B) for benefits due him under the terms of his plan.

### COUNT I, PART 1:
**Unum's Denials of Plaintiff's Administrative Appeal is Void Because § 503(2) Appeals Cannot Under the Due Process Clause of the Constitution Be Judged By a Decision Maker With a Financial Interest in the Outcome of Such Appeals[5].**

10. The Plaintiff hereby incorporates paragraphs 1 through 9 of this Complaint as though fully set forth herein.

---

[5] To understand how deeply engrained this concept of fundamental fairness in adjudicative tribunals is one need look no further than James Madison's observation in *Federalist No. 10* that, "No man is allowed to be a judge in his own cause because **his interest would bias his judgment and not improbably, corrupt his integrity**." (Emphasis added.) Alexander Hamilton's observation to the same effect in *Federalist No. 79* observed, "In the general course of human nature, **a power over a man's subsistence amounts to a power over his will**." (Emphasis in the original.)  These pronouncements were uttered in the context of determining the necessity of insuring an independent judiciary. It would be difficult to deny that Unum does not have power over the subsistence of its employees actually deciding § 503(2) appeals.  The assurance with which Madison and Hamilton made these observations suggests that they were taken as obvious, fundamental truths during the period the Constitution and the first Ten Amendments were drafted, thereby lending weight to the Plaintiff's claim that the lack of financial neutrality in an adjudicator has always been constitutionally intolerable.

11. The Plaintiff Michael Ferraro was the manager of three automobile dealerships in Portland, Maine owned by Summit Automotive Partners, LLC.

12. The long term disability policy under which Ferraro was insured offered coverage on an elective basis which was or would be fully paid by the electing employee.

13. The policy at issue promised to pay 60% of a disabled employee's pre-disability income (to a maximum of $10,000.00 per month) in the event a covered employee could not perform the material and substantial duties of his own occupation for two years of disability, and the duties of any occupation after payment for two years of disability. (Policy No. 579169 is attached to the original complaint in this case filed in State court as Exhibit 1.)

14. While at work, and while covered under the Unum Life policy at issue, the Plaintiff became ill with a Mycobacterium Avium Complex infection (MAC) exacerbated by an underlying non-HIV immune deficiency and asthma which rendered him unable to adequately perform the duties of his own occupation as General Manager responsible for three dealerships and which required a work-week of at least 60 and sometimes 70 hours.

15. The Plaintiff's illness caused him to suffer from fatigue, lack of energy, and a compromised ability to focus and concentrate on the work activities required of him.

16. The decline in his productivity led to the termination of his employment on April 9, 2009 (his last day worked was April 8, 2009).

17. The Plaintiff's illnesses proximately caused the decline in the Plaintiff's ability to perform his job duties which in turn proximately caused the termination of his employment.

18. The Plaintiff submitted an initial application for long term disability benefits under the Plan but his claim was denied.

19. The Plaintiff appealed the initial denial of his claim showing that there was no factual basis for that denial, and further that the denial violated the provisions of the Regulatory Settlement Agreement executed between the state of Maine and 47 other states and Unum Life in 2004 requiring greater weight to be given to an attending physician's assessment than to the assessment from a physician enlisted by Unum Group.

20. Unum Group sought a record review from Allen Blaivas, DO whose first report was received by Unum Group benefits personnel on January 22, 2010.

21. The initial report from Dr. Blaivas was actually favorable to the Plaintiff's claims.

22. On or about March 4, 2010 Unum Group employees notified the Plaintiff that his benefits were going to be granted after all because they had reconsidered and found him disabled from April 9, 2009 to February 10, 2010.

23. However, Veronica Hargrave, Unum Group's "appeals" decision maker for this case called Dr. Blaivas and solicited a second opinion during an ex parte phone call which this time was slanted in favor of Unum's desire not to pay benefits and was used arbitrarily to terminate the Plaintiff's benefits as of February 10, 2010.

24. There is no transcript of Hargrave's ex parte phone call with Unum's medical expert.

25. The final letter from Unum Group stated that the Plaintiff would not be paid any benefits beyond February 10, 2010, even though under the terms of the Plan he was

entitled to benefits for his inability to do his own occupation for two years, an additional 17 months.

26. Unum's denial of further benefits to the Plaintiff breached Unum Life's insurance contract with the Plaintiff since the Plaintiff had not recovered to the point of being able to perform his own occupation.

27. The policy which is the subject of this lawsuit was issued in Maine, and renewed in Maine.

28. Under the terms of the contract the Plaintiff is entitled to receive $10,000 per month while disabled.

29. The contract between Unum Life and the Plaintiff was a binding two-party contract.

30. However, at no time did any employee of Unum Life review, ratify, or have any input into the decision to pay only limited, minimal benefits to the Plaintiff on account of his disability.

31. All decisions with respect to Michael Ferraro's claim were made by employees of Unum Group rather than employees of Unum Life Insurance Company of America.

32. The financial interest of Unum Group in the outcome of Ferraro's claim was direct; to the extend Ferraro lost, Unum Group gained.

33. Because the exercise of § 503(2) adjudicative authority is corrupted by Unum Life Insurance Company of America's interest in the decision it would make on appeal it must necessarily be held to be void.

34. At all relevant times Ferraro was disabled according to the terms of the Plan and entitled to benefits under the terms of his Plan.

**COUNT I CONTINUED, PART 2:**
**Second Constitutional Due Process Violation: Unum's Denial of Plaintiff's Administrative Appeal is Void Because the Due Process Clause of the Fifth Amendment to the Constitution Requires that the Power of the State Cannot Be Used to Compel Its Subjects to Submit Disputes to an Adjudicative Tribunal in Which There is No Entitlement to a Hearing of Any Kind, Either Post-Deprivation or Pre-Deprivation, in Which to Effectively Examine and Challenge the Evidence Enlisted by an Insurer for the Purpose of Defeating a Plan Participant's Benefit Claim.**

35. At no time during the conduct of an appeal mandated by § 503(2) of ERISA will Unum Group offer, allow, or permit a hearing in which a denied plan participant can present his or her case before a tryer of fact, challenge the credibility of the evidence against his or her case including witnesses offering evidence against his or her case.

36. The due process clause of the Fifth Amendment to the Constitution requires that parties to an adjudicative proceeding occurring not only under color of law, but actually compelled by law have the opportunity effectively to examine the evidence enlisted against their claim and to effectively present the evidence favoring their claim.

37. In addition, parties to a mandatory adjudicative proceeding should have available a forum in which to effectively register objections to ex parte communications between an appellate decision maker and witnesses.

38. In every federal circuit adjudicative proceedings beyond the § 503(2) appeals proceeding are considered to be "reviews" of a plan administrator's administrative determination.

39. Such judicial "reviews" do not and cannot effectively correct the procedural shortcomings of a § 503(2) adjudication because there is never any opportunity (absent

very exceptional circumstances) for the plan participants seeking review to present his or her case before the court nor is there any means by which the court can judge the credibility of the evidence presented by any party since the evidence nearly always consists of the submission of the insurance company claims file which in formal litigation is renamed the "Administrative Record" and accepted by the court as a reliable body of evidence upon which to decide which party wins and which party loses.

**COUNT I, CONTINUED, PART 3:**
**Class Allegations Pursuant to Fed. R. Civ. P. 23(b)(2)**

40. The Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) on behalf of all persons:

(a) Covered under ERISA governed LTD plans insured under policies issued by Unum Life Insurance Company of America, or any other Unum Group subsidiary such as Paul Revere and First Unum;

(b) Who made application to a Unum Group subsidiary for LTD benefits;

(c) Whose claims, if successful, were required to be paid by the Unum subsidiary and or Unum Group from the funds of the subsidiary or Unum Group itself;

(d) Whose claims were initially denied by Unum Group;

(e) Who were not offered a hearing by Unum Group in which to effectively present their § 503(2) appeals; and

(f) Whose ERISA disability plans limited the right to contest initial claim denials brought under the color of § 503(2) of ERISA to an appeal to Unum Group claims handlers acting as "appeals specialists" rather than to a tribunal which could be characterized as a "neutral and detached judge in the first instance". *Concrete Pipe and*

*Products of California, Inc. v. Construction Laborers' Pension Trust*, 508 U.S. 602, 617 (1993).

41. The relief sought would also benefit potential plan participants enrolled in welfare benefit plans insured by subsidiaries of Unum Group all of which, or any of which in the event that there are any exceptions, name the issuing insurer or Unum Group as the sole and exclusive § 503(2) appeal fiduciary.  In this more peripheral sense these enrollees are also class members.

42. The Plaintiff further states that he will be a fair and adequate representative of the class he seeks to represent and is committed to continuing his class representation without placing his own interests ahead of the interests of the class.

43. The attorney for the Plaintiff will also adequately represent the class the Plaintiff seeks to certify because of his experience in representing plaintiffs in class actions and because of his experience with and his understanding of the law of ERISA generally and of the constitutional issues raised by § 503(2) as they apply to the Plaintiff and all putative class members, issues which lie at the heart of this case.

44. The class is so numerous that joinder of all class members would be impracticable. It is Unum's routine business practice to insure and assume the obligation to pay benefits primarily in welfare benefit plans where it is given the exclusive right by the plan to decide benefit appeals. Therefore, class membership extends across an extensive range of ERISA governed plans insured by Unum.

45. A targeted multistate market conduct examination of Unum Group's claims handling was concluded in November 2004.  That examination resulted in Unum Group's

agreement, through its subsidiaries, to reassess approximately 215,000 claims (that number includes both non-ERISA IDI claims and ERISA governed LTD claims).

46. By fair and conservative extrapolation the Plaintiff estimates that the size of the class would number more than 5,000. Plan participants who have made claims for benefits under ERISA plans insured by a Unum Group subsidiary under policies and procedures dictated by Unum Group which also provide that the sole avenue of appeal is to Unum Group, a real party in interest, in a forum which provides for no effective presentation or examination of the evidence pertaining to the plan participants case.

47. By fair extrapolation more than 5,000 participants in such plans have had LTD claims denied by Unum Group claims handlers not only at the initial claims processing stage but on appeal sought by right pursuant to § 503(2).[6]

48. Nearly all, if not all questions of law and fact are common to the class.

49. The abject failure of the Secretary of Labor to recognize that the power or authority created by Congress in enacting § 503(2) of ERISA is nothing less than the authority to adjudicate disputes which requires that § 503(2) tribunals incorporate the most basic elements of due process as had an identical, negative impact on all class members: they had been (or will be) deprived of the right to a "full and fair review" when the essential elements of any such appeals are scrutinized in light of the fundamental requirements of the due process clause of the Fifth Amendment.

---

[6] There is an important distinction between the initial claims decision and the appellate decision made under color of § 503(2) of ERISA for the satisfaction of the statutory mandate that plans make such appeals available. No claim is made that the initial denial of an ERISA governed claim is anything other than purely private action affecting the interest of private parties. The constitutional problem arises only when an initial claims denial gives rise to a dispute between plan participant and the insurer subject to an appeal procedure in which the insurer gets to judge its own case. The absurdity is worthy of Lewis Carroll's fiction.

50. The parties opposing the class have acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole.

51. The claims or defenses of the representative parties are typical if not identical to the claims or defenses of the class.  Specifically those claims and/or defenses are:

(a) That the function of resolving a controversy or dispute about whether a claim was rightly or wrongly denied is necessarily an adjudicative function, no different in kind from what courts, arbitrators (by agreement), or administrative law judges do in deciding who wins and who loses the controversies placed before them;

(b) That a Congressional mandate to perform a particular function necessarily creates the authority to carry out that function;

(c) That without a statutory foundation review decisions by insurers could not serve as quasi-judicial decisions for resolving disputes between their own insureds and themselves with great potential for a significant and corrupting impact on ultimate judicial resolution.

(d) That when any judge or any person exercising governmentally derived adjudicatory authority has a direct financial interest in a dispute brought before him or her for resolution, disqualification is automatically mandated by this country's due process jurisprudence.  See *Caperton v. Massey Coal Inc.,* 129 S.Ct. 2252 (2009). Only the existence of a financial conflict need be proven, not that the result was caused by the conflict. *Id.* See also *Gibson v. Berryhill*, 411 U.S. 564, 571 (1973);

(e) That the current Department of Labor regulations[7] for insured plans requiring an individual different from the initial claims denier but permissibly employed by the same insurer must decide § 503(2) appeals challenging a decision by that insurer are completely inadequate to protect due process generally and here in particular because Unum directly controls the tenure and financial wellbeing of its employees who decide § 503(2) appeals;

(f) That Congress also failed to define what it intended a "full and fair review" to be, delegating that obligation to the Secretary;

(g) That the type of authority conveyed by Congress in § 503(2) cannot be exercised by just anyone who assumes it.  Nor can Congress dispose of the other chief ingredient of due process, some form of a hearing or forum in which the parties can effectively present their claim and examine the opposing parties evidence. It would, for example, be constitutionally impermissible for Congress to authorize administrative law judges to adjudicate Social Security Disability claims under a compensation system which geared compensation and retention to depend on the money saved from denied disability claim appeals.   Two firmly established constitutional requirements for exercising statutorily based adjudicative authority is that an effective forum be available and a tribunal be financially disinterested in the claims submitted for adjudication;[8]

---

[7] 29 C.F.R. § 2560.503-1(h)(3)(ii).

[8] See *Schweiker v. McClure,* 456 U.S. 188, 195 (1982) which involved a due process challenge to hearing officers hired by a private insurance company. There the court said:

> The hearing officers involved in this case serve in a quasi-judicial capacity, similar in many respects to that of administrative law judges. As this Court repeatedly has recognized, due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities.

(h) That the Supreme Court in *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008) while not presented with the issues raised here has acknowledged that a financial conflict of interest exists when an employer or insurer both pays and decides claims;

(i) That because Congress, like all branches of government, is subject to constitutional constraint, it could not have intended "full and fair reviews" to denote administrative adjudications conducted without entitlement to a hearing by a party financially interested in the outcome of the review followed only by limited judicial review.

WHEREFORE the Plaintiff prays on his own behalf and on behalf of all members of the Plaintiff class that this Court:

a. Certify the class under Fed.R.Civ.P.23(b)(2).

b. Declare the results of benefit disputes appealed by the Plaintiff and class members to Unum Group and resolved in Unum Group's favor (i.e. by upholding Unum its initial claim denial) void and of no lawful effect under the due process clause of the Fifth Amendment;

c. Declare Unum Group insured disability plans naming Unum Group or its subsidiaries as the exclusive § 503(2) appellate fiduciary unlawful;

d. Order that Unum Group provide notice to all individuals whose claims for disability benefits were denied under ERISA governed disability insurance plans in which Unum Group or a subsidiary as insurer also provided that the only avenue for pursuing "full and fair" review challenges to initial claim denials was to Unum Group

---

There was no due process violation in *McClure* only because both the funds to pay the hearing officers and to pay successful appellants (who were Medicare Part B claimants) were provided by the government, not the insurance carrier administering the claims thereby removing the financial conflict. That, of course, is not this case.

itself or to a subsidiary are entitled[9] to have denied § 503(2) claims decided anew in a court of law with jurisdiction over the controversy.

e. For an order permanently enjoining Unum Group from naming itself or allowing itself to be named as the § 503(2) adjudicator for hearing appeals from denied claimants in disability plans it insures if such plans are governed by ERISA;

f. In addition the Plaintiffs pray for any further relief deemed just and lawful, and an award of costs and reasonable attorney's fees.

**Count II:**
**The Secretary Has Failed to Meet the Department of Labor's Obligation to Ensure that § 503(2) is Interpreted, Applied, and Exercised, in a Manner Consistent with the Constitutional Guarantee of Due Process**

52. The Plaintiffs hereby incorporate by reference Paragraphs 1 through 51 above as though such paragraphs were fully incorporated herein.

53. Section 503(2) of ERISA specifically delegates to the Secretary the special responsibility for promulgating regulations governing the use of the authority exercised by "the appropriate named fiduciary" in "conducting full and fair reviews" ("in accordance with the regulations of the secretary…"). As Congress is bound by the Constitution so is the exercise of authority it delegates to the Secretary.

54. Also, the Secretary of Labor, pursuant to § 505 of ERISA (29 U.S.C. § 1135), having undertaken the responsibility for prescribing what are called "minimum" regulations necessary to protect plan participants and beneficiaries who chose to contest claim denials under § 503(2) of ERISA, assumed the obligation to provide at least the most basic of constitutional safeguards for plan participants appealing claims. The

---

[9] If such claims are not otherwise barred by the forum's statute of limitations.

regulations the Secretary promulgated under § 503 and § 505 of ERISA fail this end because all peripheral rights and protections said by the Secretary to provide a measure of due process amount to very little when Unum acts as a proxy for governmental adjudicative tribunals like federal district courts and is thereby placed in **a position** to gain profit from manipulating the § 503(2) appeal process to favor its financial interests.

55. The Secretary's regulations are inadequate because they fail to comprehend the distinction between laws and rules which *merely regulate purely private activity* and the categorically different law and rules which, *uniquely, created adjudicative authority for use by private parties*.

56. The current regulations fail to understand that the authority necessarily delegated by § 503(2) to hear appeals and to "fully and fairly" resolve disputes between ERISA claimants and plan insurers is adjudicative in nature.

57. The current regulations fail to account for judicial interpretation which has become, necessarily, integral to the meaning of § 503(2). And to recognize that every federal circuit court of appeals has held:

(a) That § 503(2) appeals must be exhausted before a denied claimant can bring his case before a court, thereby adding the element of governmental compulsion to the appeals process utilizing private fiduciaries to conduct § 503(2) dispute resolutions when participants wish to contest a denied claim;

(b) That the Federal Rules of Civil Procedure and the Federal Rules of Evidence do not apply to civil actions brought by ERISA plaintiffs under § 502 (29 U.S.C. § 1132) in the uniform way they apply to other civil actions not withstanding that no statute

exempts lawsuits by ERISA plaintiffs from the uniform application of the Federal Rules of Civil Procedure and Evidence;

(c) That any appeal to a formal court is limited in whole or in part to a review of a body of evidence of varied composition called the "administrative record" (usually only an insurer's claim file) consisting substantially of unexamined hearsay not subject to challenge under **any** rules of evidence nor confrontation at a hearing in accordance with **any** rules of procedure, thereby enabling a financially interested § 503(2) fiduciary to substantially distort the record to be judicially "reviewed" in its favor and to benefit from an unexamined judicial presumption that an insurer's claim file, the "administrative record", is a reliable body of evidence upon which to decide an ERISA case;

(d) That even when a plaintiff prevails before a court it often means only that his case is subject to "remand" to "plan administrators" for re-adjudication whether or not the "administrator" has a financial interest in how he or she resolves the dispute. This ad hoc practice adopted by federal courts for ERISA cases supports the proposition that nominally private insurers are government proxies as quasi-judicial agents acting in a governmental capacity when they assume the authority to decide § 503(2) appeals.  (See *Schweiker v. McClure* at 191-95.)

58. The authority exercised by parties conducting § 503(2) "full and fair reviews" is so firmly supported by statutory authority, so inextricably enmeshed, or entangled with judicial and agency interpretation that it reinforces the proposition that the negative consequences of § 503(2) appeals as a dispute resolution mechanism depends entirely on governmental compulsion or, generically, state action, without which Prudential's reviews could have no binding, negative legal impact.

59. The Secretary's regulations fail to recognize that when the party possessing the exclusive authority to conduct § 503(2) reviews is an insurer who both decides claims and who pays successful claims from its own funds, the resulting conflict of interest **must disqualify** it from exercising the authority to provide the "full and fair" reviews mandated by Congress in § 503(2). Such adjudicatory resolutions can never be full or fair under the due process clause as long as:

(a) They are conducted by a tribunal with a financial interest in the outcome;

(b) They fail to afford any hearing or any forum in which a participant can fully present his or her claim;

(c) They are the exclusive avenue provided by a plan for contesting administratively an adverse benefit decision;

(d) They preclude a subsequent full and fair hearing subject to consistently applied rules of evidence and procedure before a court of law; and

(e) Because of their constitutional deficiencies they are likely to have a negative impact on the final legal resolution of ERISA welfare benefit claims by participants.

60. The Department of Labor had actual notice of one means of avoiding the Constitutional infirmity of the current regulations, but failed to act on it.

61. The constitutional flaw described above could and should have been addressed when the Secretary received a precatory directive from then President Clinton that recognizing that fundamental fairness required governmentally based adjudicative authority to be exercised at least in a final administrative stage by a financially disinterested party.

62. The February 20, 1998 memorandum from the President to the Secretary directed her "to propose regulations to strengthen the appeals process for all Employee Retirement Income Security Act (ERISA) health plans..." Fed.Reg. 70246 (November 21, 2000).

63. Although the President's Memorandum referred specifically to health plans, the Department of Labor in response professed to develop "a proposal to substantially reform the standards for the resolution of benefit claims under all employee benefit plans covered by the Act." *Id.* The new regulations effective January 2002 alleged to provide minimum standards for § 503(2) appeals apply equally to health and disability plans in all relevant respects.

64. The then Secretary noted that "the President's Memorandum specifically endorsed the report of the President's Advisory Commission on Consumer Quality in the Healthcare Industry which set out specific rights of healthcare consumers that should be protected, including the right 'to *a fair* and efficient process *for resolving differences with their health plans, health care providers*, and the institutions that service them, including a rigorous system of internal review *and an independent system of external review*.'" (Emphasis added) *Id.* n 1.

65. While the Secretary noted, "That the procedural reforms contained in this regulation [effective January 1, 2002] are necessary to guarantee important procedural rights to benefit claimants," incorporation of any means of independent or external review was wholly absent. *Id.* at 70246.

66. At the most fundamental level, the Secretary's regulations are inadequate because they ignore the lynchpin of due process in favor of a few peripheral procedural

"rights", subject to easy manipulation, concerning notice and appeal, and have allowed and continue to allow Unum to adjudicate § 503(2) appeals to which it is an actual party in interest. That circumstance is anathematic to established notions of what is meant by due process of law guaranteed by the Fifth Amendment to the Constitution.[10]

67. The inadequacy of the Secretary's regulation of the authority granted by Congress under § 503(2) proximately caused Unum to decide its disputes with Ferraro and other class members in favor of its own financial interest.

68. As long as the Secretary or Congress fail to require the adjudicatory authority delegated by § 503(2) to be exercised by financially neutral adjudicators § 503(2) will remain unconstitutional as will its exercise by financially interested insurers.

WHEREFORE the Plaintiff prays that this Honorable Court declare that the Secretary of Labor's regulations governing the application of § 503(2) of ERISA (29 C.F.R. § 2560.503-1 *et. seq.*) cannot serve as minimum standards because of their failure to provide plan participants with a full and fair process for resolving disputes with their benefit plans which must include a procedure for the constitutionally fair resolution of § 503(2) appeals by a financially disinterested party; for an order that compliance with the Secretary's current § 503(2) regulations does not comply with the constitutional guarantee of due process in the exercise of adjudicative authority; for an order enjoining the Secretary from promulgating regulations claiming to provide for "minimum requirements for employee benefit plan procedures pertaining to claims for benefits by

---

[10] See *Caperton v. Massey Coal Co. Inc.,* 129 S.Ct. 2252 (2009) in which both the majority and dissenting justices agree that all judges are required to be disqualified on due process grounds if they have a financial interest in the case before them. *Gibson v. Berryhill,* 411 U.S. 564 (1973), shows there is no difference between appointed judges and otherwise private parties exercising authority derived from the state. What matters is that the adjudicative process is compulsory (i.e. the parties must participate), and results in or influences fully enforceable determinations of the rights of the parties.

participants and beneficiaries" (29 C.F.R. § 2560.503-1(a)) that fail to provide for financially independent reviews for denied benefit claimants; for such other relief as this court may deem lawful and just, and for an award of costs and reasonable attorney's fees. [11]

### Count III

69. Paragraphs 1 through 68 are hereby incorporated in Count III as though set forth fully herein.

70. The Plaintiff is entitled in common with all class members to a plenary hearing at which he may fully examine Unum Group's evidence against his entitlement to benefits, to fully submit his own evidence in favor of his claim and to receive judgment awarding him benefits.

WHEREFORE, the Plaintiff prays for a judgment from this Court after a plenary "full and fair" hearing before the Court for the benefits due him under his insured long term disability plan underwritten by Unum Life Insurance Company of America, the amount of said benefits being indeterminate because of the length of time that will inevitably pass in the course of this litigation and for costs and reasonable attorney fees.

Respectfully Submitted,

/s/ Jon Holder
Jon F. Holder, Esq.
Attorney for the Plaintiffs
Maine Bar No. 1463
77 Mount Desert Street
PO Box 920
Bar Harbor, ME 04609
(207)288-1220
jon@holderandgrover.com

---

[11] The Plaintiffs recognize that judicial deference is ordinarily owed to agency interpretations of statutes which it is responsible for implementing. But such deference obviously does not and cannot trump constitutional imperatives.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2010 I electronically filed the foregoing **AMENDED COMPLAINT SEEKING INDIVIDUAL BENEFITS DUE, CLASS AND DECLARATORY RELIEF** on behalf of the Plaintiff Michael Ferraro with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

    James M. Bowie, Esq.
    Sarah Y. Gayer, Esq.
    Attorneys for PDA
    Thompson & Bowie, LLP
    Three Canal Plaza
    PO Box 4630
    Portland, ME 04112

    Geraldine Sanchez, Esq.
    Katharine I. Rand, Esq.
    Avery T. Day, Esq.
    Attorneys for Unum Life Ins. Co. of America
    and Unum Group
    Pierce Atwood, LLP
    One Monument Square
    Portland, ME 04101

                /s/ Jon Holder
                Jon Holder, Esq.
                Attorney for the Plaintiff
                Maine Bar # 001463
                Holder & Grover, PA
                P.O. Box 920
                Bar Harbor, ME 04609
                (207) 288-1220
                jon@holderandgrover.com